Filed 2/18/21  P. v. Bell CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B305103 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. YA098886 |
| KENNETH EUGENE BELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan B. Honeycutt, Judge. Affirmed.

Kristin Traicoff, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Kenneth Eugene Bell was convicted of simple assault committed for the benefit of a criminal street gang. On appeal, he argues that during jury selection, the prosecutor unconstitutionally discriminated on the basis of race by using two of her five peremptory challenges to strike Black women from the panel. We affirm.

# PROCEDURAL BACKGROUND[1]

By information filed April 26, 2019, defendant was charged with one count of assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1); count 3), in which he personally inflicted great bodily injury (§ 12022.7, subd. (a)), committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(B)).[3] The information also alleged defendant had been convicted of four prior felonies that constituted strike priors (§§ 667, subds. (b)–(j), 1170.12), serious-felony priors (§ 667, subd. (a)(1)), and prison priors (§ 667, subd. (b)). Defendant pled not guilty and denied the allegations.

After a bifurcated trial at which he did not testify, defendant was found not guilty of count 3 but guilty of the lesser-included offense of simple assault (§ 240). The jury found the gang allegation (§ 186.22, subd. (a)) true. Defendant waived his right to a jury trial on the prior convictions and later admitted them.

---

[1] Because the facts of this case are irrelevant to the issues raised on appeal, we do not address them.

[2] All undesignated statutory references are to the Penal Code.

[3] Counts 1 and 2 concerned other defendants who are not parties to this appeal.

The court denied defendant's motion to strike the prior convictions and sentenced him to an aggregate term of 16 months in state prison—one-third the mid-term of two years, doubled for the prior strike—to run consecutively to his sentence in case No. TA141249.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends that during jury selection, the prosecutor unconstitutionally discriminated against Prospective Juror Nos. 2125 and 7665 on the basis of race. We disagree.

### 1. Legal Principles and Standard of Review

Both the state and federal constitutions bar lawyers from striking prospective jurors based on their membership in cognizable protected groups. (*People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*).) Race is a protected classification.

"When a party raises a claim that an opponent has improperly discriminated in the exercise of peremptory challenges, the court and counsel must follow a three-step process. First, the *Batson/Wheeler* movant must demonstrate a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. … [¶] Second, if the court finds the movant meets the threshold for demonstrating a prima facie case, the burden shifts to the opponent of the motion to give an adequate nondiscriminatory explanation for the challenges." (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158 (*Gutierrez*).)

Once the prosecutor establishes a race-neutral justification for striking a prospective juror, the court must make a " 'sincere

and reasoned attempt' " to evaluate the credibility of the explanation. (*Gutierrez, supra,* 2 Cal.5th at p. 1159.) "This [third step] of the *Batson/Wheeler* inquiry focuses on the subjective genuineness of the reason, not the objective reasonableness." (*Id.* at p. 1158.) "[W]hen it is not self-evident why an advocate would harbor a concern [about a particular juror], the question of whether a neutral explanation is genuine and made in good faith becomes more pressing. That is particularly so when, as here, an advocate uses a considerable number of challenges to exclude a large proportion of members of a cognizable group." (*Id.* at p. 1171.) Thus, "a truly 'reasoned attempt' to evaluate the prosecutor's explanations [citation] requires the court to … determine not only that a valid reason existed but also that the reason actually prompted the prosecutor's exercise of the particular peremptory challenge." (*People v. Fuentes* (1991) 54 Cal.3d 707, 720.)

When the trial court denies defendant's motion at the prima facie stage, "we apply the standard the high court articulated in *Johnson* [*v. California* (2005)] 545 U.S. 162, and undertake an independent review of the record to decide 'the legal question whether the record supports an inference that the prosecutor excused a juror on the basis of race.' [Citation.] Under *Johnson*, a defendant satisfies the requirements of *Batson*'s first step 'by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.' [Citations.] The defendant 'should make as complete a record of the circumstances as is feasible.' [Citation.]" (*People v. Taylor* (2010) 48 Cal.4th 574, 614.)

Where the court denies the defendant's motion at the third stage, our standard of review depends on the depth and quality of

the court's inquiry. We accord the court's ruling great deference if—and only if— the court "has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror." (*People v. Silva* (2001) 25 Cal.4th 345, 385–386.) If the court has *not* made such an attempt, we review its ruling de novo. (*Gutierrez, supra*, 2 Cal.5th at p. 1159.)

Here, the court explicitly found defendant had not established a prima facie inference of discrimination for Juror No. 7665. The record is less clear about its findings for Juror No. 2125, however.

When the court turned its focus to Juror No. 2125, it simply stated that nothing about that juror stood out. Unsolicited, the prosecutor then offered a reason for the strike—the juror's hesitance about applying the one-witness rule. But the court did not, at that point, rule on whether defendant had raised an inference of discrimination for that juror (step 1); nor did it address whether it believed the prosecutor's stated reason was genuine (step 3). Instead, it said: "I do find that a race neutral reason has been proffered. I do believe it is an inappropriate challenge for cause and the request for mistrial is denied."

As defendant notes, this ruling does not obviously correlate with any step of the *Batson/Wheeler* analysis. Our reading suggests, however, that the court here treated the prosecutor's remarks as an argument about whether an inference of discrimination existed (step 1) rather than as a race-neutral justification the court was required to evaluate (step 3). Under this view, the court's remark about an "inappropriate challenge for cause" refers to defense counsel failing to make a prima facie showing, not the propriety of prosecutor's strike. As such, we

5

limit our analysis of this issue to the prima facie stage of the *Batson/Wheeler* process.[4]

## 2.    Defendant did not meet his prima facie burden.

"Although the question at the first stage concerning the existence of a prima facie case depends on consideration of the entire record of voir dire as of the time the motion was made [citation], we have observed that certain types of evidence may prove particularly relevant. [Citation.] Among these are that a party has struck most or all of the members of the identified group from the venire, that a party has used a disproportionate number of strikes against the group, that the party has failed to engage these jurors in more than desultory voir dire, that the defendant is a member of the identified group, and that the victim is a member of the group to which the majority of the remaining jurors belong. [Citation.] A court may also consider nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record [citations] and that necessarily dispel any inference of bias. [Citations.]" (*People v. Scott* (2015) 61 Cal.4th 363, 384.)

In this case, defendant made a meager showing in support of his *Batson/Wheeler* challenge. At the hearing, defense counsel relied *solely* on the fact the prosecutor had exercised two of her five peremptory challenges against Black prospective jurors.[5]

---

[4] We note, however, that we would use the same standard of review, and reach the same conclusion, under step 3 as well.

[5] Defense counsel made the following record: "[The prosecutor] initially excused [Juror No. 2125] as her third peremptory challenge, and that juror was a Black woman and my client is Black, just for the record. [¶] She has just now excused [Juror No. 7665], [who] was called to go [to

6

"Such evidence, without more, is insufficient to create an inference of discrimination, especially where, as here, the number of peremptory challenges at issue is so small. [Citations.]" (*People v. Taylor*, *supra*, 48 Cal.4th at p. 643.) For example, in *Hawthorne*, the California Supreme Court held that the defendant had not made a prima facie showing of discrimination where his motion was based solely on the assertion that the prosecutor used three of 11 peremptories to excuse Black prospective jurors and the record was silent as to both the number of African–American prospective jurors, if any, that were included in either the entire jury venire or the jury panel when the challenge was made and the racial composition of the jury that ultimately tried and convicted defendant. (*People v. Hawthorne* (2009) 46 Cal.4th 67, 79–80; see *People v. Bonilla* (2007) 41 Cal.4th 313, 343 & fn. 12 ["an inference of discrimination is difficult to discern from a small number of challenges"].)

Nor does our independent review of the record reveal any other basis for concluding these jurors were excused because of their race. Although defendant, like Prospective Juror Nos. 2125 and 7665, is Black, the record here does not disclose the racial or ethnic makeup of the juror pool. As such, nothing suggests the prosecutor struck most or all of the Black jurors.

On the other hand, the record *does* disclose race-neutral reasons for excusing Juror Nos. 7665 and 2125. Juror No. 2125 was initially skeptical of the rule that the testimony of one

---

the jury box] and counsel excused her before she did so. There was also another Black woman [presumably Juror No. 2125], and I would just make a motion for a mistrial based on *Wheeler/Batson*."

witness can be sufficient to prove a defendant's guilt, although she ultimately accepted it.[6] That prospective juror also indicated that she'd be more comfortable convicting if the defendant confessed, which the defendant in this case had not.

Next, although Juror No. 7665 had no problem with the one-witness rule, she said sitting in judgment of a criminal defendant would be "a very difficult decision." She explained, "I think it's a heavy thing to have to be a judge, a juror of something like this in a criminal case. I mean, honestly, I don't want to be responsible for saying aye or nay or whatever. That is kind of heavy to me." It would be "a big responsibility," she explained, "and it's also scary. I would say, oh, no, he didn't do it. Or oh, yeah, he did. And I just don't—that's a little heavy to me." It would be reasonable to believe such hesitation could lead to a hung jury.

Based on the limited record before us, therefore, we conclude that defendant did not establish a prima facie case of discrimination as to either prospective juror.

---

[6] To be sure, the prosecutor accepted other prospective jurors who expressed skepticism about the one-witness rule, but the record does not reveal the race of those jurors, and, in any event, the comparative juror analysis approved by the court in *Miller-El v. Dretke* (2005) 545 U.S. 231, does not apply to the prima facie stage of the *Batson* analysis. (*People v. Lenix* (2008) 44 Cal.4th 602, 622, fn. 15; *People v. Bonilla*, *supra*, 41 Cal.4th at p. 350 ["Whatever use comparative juror analysis might have in a third-stage case for determining whether a prosecutor's proffered justifications for his [or her] strikes are pretextual, it has little or no use where the analysis does not hinge on the prosecution's actual proffered rationales, and we thus decline to engage in a comparative analysis here."].)

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



                                  LAVIN, J.

WE CONCUR:



EDMON, P. J.



EGERTON, J.